James F. Monagle, Esq. (SBN 236638)
MULLEN COUGHLIN LLC
500 Capital Mall, Suite 2350
Sacramento, CA 95814
T: 267-930-1529
jmonagle@mullen.law

*Attorneys for Defendant*
*Choose Your Horizon, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

KAREN MARTINEZ and ELI SILVA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHOOSE YOUR HORIZON, INC.,

Defendant.

**CASE NO. 3:24-CV-02798-LB**

Assigned to Hon. Laurel Beeler

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, March 27, 2025 at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom B of the United States District Court for the Northern District of California, before the Honorable Laurel Beeler, located at 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, CA 94102, Defendant Choose Your Horizon, Inc. will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(2) for an Order dismissing the Plaintiffs' First Amended Class Action Complaint and claims therein for lack of personal jurisdiction over the Defendant, or, in the alternative, for an

Order compelling Plaintiff Karen Martinez ("Martinez") to arbitrate her individual claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, and to dismiss or stay all claims in this action by Plaintiff Martinez pending arbitration.

The basis for this Motion is that Plaintiffs have failed to establish that this Court has general or specific jurisdiction over the Defendant, and a valid arbitration provision and class action waiver governs the claims asserted in this case by Plaintiff Martinez. The Motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Declaration of Mark Holland, and all other materials supporting the Motion or the Reply filed in support thereof, and such arguments and authorities as may be presented at or before the hearing.

DATED: February 12, 2025

/s/ James F. Monagle
James F. Monagle
jmonagle@mullen.law
MULLEN COUGHLIN LLC
500 Capital Mall, Suite 2350
Sacramento, CA 95814
Telephone: (267) 930-1529
Facsimile: (267) 930-4771

*Attorneys for Defendant*
*Choose Your Horizon, Inc.*

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND.................................................................. 1

III. ARGUMENT ........................................................................................ 5

A. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ........................................................................5

1. The Court Does Not Have General Personal Jurisdiction Over CYH Because CYH Is Not "At Home" In California ..........................................6

2. The Court Does Not Have Specific Personal Jurisdiction Over CYH Because CYH Does Not Aim Conduct at California Giving Rise to Liability, And Any Forum-Related Conduct by CYH Is Unrelated ...........................7

B. PLAINTIFF MARTINEZ'S CLAIMS ARE SUBJECT TO A MANDATORY ARBITRATION PROVISION AND THE COURT SHOULD COMPEL ARBITRATION OF HER CLAIMS ..................................................................11

1. Arbitration Agreements are Presumptively Enforceable. ..........................11

2. There is an Enforceable Arbitration Agreement Between CYH and Plaintiff Martinez and the Agreement Covers the Instant Dispute. .........................13

a) There is an Agreement to Arbitrate Between CHY and Plaintiff Martinez ..................................................................13

b) The Agreement Covers the Instant Dispute ..................................16

IV. CONCLUSION........................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldrich v. Nat'l Collegiate Athletic Ass'n*,
484 F. Supp. 3d 779 (N.D. Cal. 2020) .... 6

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .... 9, 10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .... 11

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .... 7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .... 13, 14, 15

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .... 12

*Calder v. Jones*,
465 U.S. 783 (1984) .... 7

*Cheng v. PayPal, Inc.*,
21-CV-03608-BLF, 2022 WL 126305 (N.D. Cal., Jan. 13, 2022) .... 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .... 11, 12

*Concat LP v. Unilever, PLC*,
350 F. Supp. 2d 796 (N.D. Cal. 2004) .... 2

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .... 6

*Dangaard v. Instagram, LLC*,
2023 WL 4869234 (N.D. Cal., July 31, 2023) .... 9

*Epic Sys. Corp. v. Lewis*,
183 S. Ct. 1612, 1621-22 (2018) .... 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 2

*Gutierrez v. FriendFinder Networks Inc.*,
2019 WL 1974900 (N.D. Cal. May 2, 2019) .......... 12

*Heller v. Rasier, LLC*,
2020 WL 413243 (C.D. Cal. Jan. 7, 2020) .......... 17

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 8

*Hopkins & Carley, ALC v. Thomson Elite*,
2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) .......... 12

*I.C. v. Zynga, Inc.*,
2021 WL 3271187 (N.D. Cal. July 30, 2021) .......... 17

*In re Ring LLC Privacy Litig.*,
2021 WL 2621197 (C.D. Cal., June 24, 2021) .......... 17

*James v. Amazon Logistics, Inc.*,
22-CV-05318-KAW, 2023 WL 3728694 (N.D. Cal., Jan. 26, 2023) .......... 15

*Kauffman v. The Home Depot, Inc.*,
2024 WL 221434 (S.D. Cal., Jan. 19, 2024) .......... 8, 10

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 14, 15

*Kellman v. Whole Foods Mkt., Inc.*,
313 F. Supp. 3d 1031 (N.D. Cal. 2018) .......... 2

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) .......... 5, 6, 7

*Macias v. Excel Bldg. Serv. LLC*,
767 F. Supp. 2d 1002 (N.D. Cal. 2011) .......... 2

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 2, 9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 15

*Mikulsky v. Noom, Inc.*,
2023 WL 4567096 (S.D. Cal., July 17, 2023) ........ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) ........ 11

*Moyer v Chegg, Inc.*,
22-CV-09123-JSW, 2023 WL 4771181 (N.D. Cal., July 25, 2023) ........ 15

*Nail v Lens.com, Inc.*,
2:24-CV-02531-SB-E, 2024 WL 3723912 (C.D. Cal., June 20, 2024) ........ 14

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*,
2015 WL 6689572 (E.D. Cal., Oct. 30, 2015) ........ 1

*Newton v. Am. Debt Servs., Inc.*,
549 Fed. App'x. 692 (9th Cir. 2013) ........ 11

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 14

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir 2023) ........ 15

*O'Connor v. Uber Tech., Inc.*,
904 F.3d 1087 (9th Cir. 2018) ........ 11

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
3:24-CV-0076-AGS-VET, 2024 WL 4230479 (S.D. Cal., Sept. 18, 2024) ........ 15, 16

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ........ 5

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ........ 7, 8

*Regan v. Pinger, Inc.*,
2021 WL 706465 (N.D. Cal. Feb. 23, 2021) ........ 2, 12

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 7

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........ 5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)........................................................................ 8

*Southwest Airlines Co. v. BoardFirst, L.L.C.*,
3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex., Sept. 12, 2007)......................................... 13

*Sparling v. Hoffmann Constr. Co.*,
864 F.2d 635 (9th Cir. 1988)........................................................................................ 12

*Specht v. Netscape Communications Corp.*,
306 F.3d 17 (2d Cir. 2002) (applying California law)........................................................ 13

*Yoon v. Meta Platforms, Inc.*,
24-CV-02612-NC, 2024 WL 5264041 (N.D. Cal., Dec. 30, 2024)......................................... 5

*Yuksel v. Twitter, Inc.*,
22-CV-05415-TSH, 2022 WL 16748612 (N.D. Cal., Nov. 7, 2022)........................................ 5

*Walden v. Fiore*,
571 U.S. 277 (2014)................................................................................................... 10

*Wynn Resorts v. Atl.-Pac. Capital, Inc.*,
497 Fed. App'x. 740 (9th Cir. 2012)............................................................................. 12

*Zhang v. Twitter Inc.*,
2023 WL 5493823 (N.D. Cal., Aug. 23, 2023)................................................................ 5

**Statutes**

9 U.S.C. § 1................................................................................................................ 1

9 U.S.C. §§ 3, 4.......................................................................................................... 12

**Rules**

Federal Rule of Civil Procedure 56............................................................................. 2

Federal Rule of Evidence 201........................................................................................ 5

## I. INTRODUCTION

Defendant Choose Your Horizon, Inc. ("CYH") provides at-home ketamine therapy guided by health professionals and offers services for individuals across the United States. Plaintiffs' lawsuit challenges CYH's use of ubiquitous internet advertising technology. CYH is not incorporated in California and is not headquartered or at home in this state, and this claim does not arise out of any California-directed conduct by CYH; therefore, CYH is not subject to personal jurisdiction in California.

Even if CYH were subject to personal jurisdiction, Plaintiff Karen Martinez has agreed to arbitrate her claims and they must be referred to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., ("FAA").[1] Plaintiff Martinez also purports to bring claims on behalf of herself and others similarly situated. However, the binding arbitration agreement both compels Plaintiff Martinez to arbitrate any claims she may have against Defendant and precludes her from purporting to bring any claims on behalf of other individuals. Accordingly, the Court should compel Plaintiff Martinez to arbitrate her claims pursuant to the applicable arbitration provision, and her claims should be dismissed, or, in the alternative, stayed pending the outcome of arbitration.

## II. RELEVANT FACTUAL BACKGROUND

1. CYH specializes in patient-centered oral ketamine assisted experiences. *See* the Amended Complaint, ECF Doc. No. 35 ("Complaint"), ¶ 51.[2] CYH is a Delaware corporation with

---

[1] Motions to dismiss for lack of personal jurisdiction and to compel arbitration can be made simultaneously. For the Court to rule on the motion to compel arbitration, it must first find that it has personal jurisdiction over the defendant. *See Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 115CV00582JAMEPG, 2015 WL 6689572, at *2 (E.D. Cal., Oct. 30, 2015).

[2] The Amended Complaint starts with numbered paragraph 24. CYH has referred to the paragraphs of the Amended Complaint as they are numbered in the document.

its principal place of business in Texas. *Id*. at ¶ 26. CYH provides services nationwide, and derives approximately 13% of its revenue from California. *See* Declaration of Mark Holland ("Holland Dec.")[3] at ¶¶ 17-18. CYH does not target California with advertising in a substantially different way than any other state. *Id*., ¶ 19.

Through CYH's website at www.chooseketamine.com (the "Website"), individuals can purchase prescription ketamine, subject to approval after meeting with a medical professional employed by CYH. *See* Complaint, ¶ 51; *see also* Holland Dec., ¶¶ 4, 8. After making a purchase and meeting with a medical professional, the medication is shipped to the patient. *Id*.

Plaintiff Martinez alleges that she visited the Website in April 2024, completed an intake screening questionnaire, and purchased low-dose ketamine therapy. *See* Complaint, ¶¶ 28, 118. Plaintiff Martinez further admits that after making her purchase, she had a mandatory appointment with a psychiatric clinician to determine if ketamine therapy was an appropriate treatment before the purchased medication was shipped to her. *Id*., ¶ 28.

---

[3] In a motion to dismiss for lack of personal jurisdiction, the "parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." *See Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 830 (N.D. Cal. 2021); *see also Kellman v. Whole Foods Mkt., Inc*., 313 F. Supp. 3d 1031, 1042 (N.D. Cal. 2018) (same). In deciding such a motion, Courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" *Id*. (citing *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011)).

Courts may also consider supporting declarations in deciding a motion to compel arbitration. *See, e.g., Regan v. Pinger, Inc*., No. 20-CV-02221-LHK, 2021 WL 706465, at *10 (N.D. Cal. Feb. 23, 2021) (citing *Macias v. Excel Bldg. Serv. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) ("In deciding a motion to compel arbitration, [the court] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.") (internal citation omitted)); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (noting that on a motion to compel a court may consider evidence outside the pleadings, such as declarations, using "a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56].")).

In making her Website purchase at issue, Plaintiff Martinez agreed to Website Terms of Use found at https://www.chooseketamine.com/terms (the "Terms of Use") which included a mandatory arbitration provision and class action waiver. When Plaintiff Martinez made her purchase, she, like every Website visitor who made a purchase, was presented with a webpage where she was required to agree to the Website's Terms of Use before making payment (the "Purchase Page"). *See* Holland Dec., ¶¶ 4-7 and Exhibit A thereto. On the Purchase Page, Plaintiff Martinez had to check a box agreeing to the Website's Terms of Use and privacy policy, both of which were presented via hyperlink, before she could proceed with her purchase. *Id*.

The Complaint contains an allegation that the Purchase Page (called the "checkout page" in the Complaint) did not require a purchaser to affirmatively consent to the Website Terms of Use by checking a box memorializing such agreement. This allegation is based on a screenshot taken by Plaintiffs' counsel on March 11, 2024. *See* Complaint, ¶ 119. However, on March 28, 2024, CYH implemented the version of the Purchase Page shown in Exhibit A to the Holland Dec., which did require a purchaser to affirmatively agree to the Terms of Use by checking a box indicating such agreement before any order could be completed. Therefore, Plaintiff Martinez's purchases allegedly made in April 2024 would necessarily have required her to check a box agreeing to the Terms of Use. *See* Holland Dec., ¶ 7.

Furthermore, after making her purchase on the Website, Plaintiff Martinez was then presented with a webpage where she was required to schedule a mandatory consultation with a medical provider before her purchased therapy could be shipped (the "Consultation Scheduling Page"). *See* Holland Dec., ¶¶ 8-11; *see also* Complaint, ¶ 28. Plaintiff Martinez also affirmatively agreed to the Website Terms of Use on the Consultation Scheduling Page by checking a box

indicating that she had "read and agreed to" the Website Terms of Use. *See* Holland Dec., ¶¶ 8-11 and Exhibits B and C thereto.

Thus, Plaintiff Martinez affirmatively agreed to CYH's Website Terms of Use on at least two separate occasions. At all relevant times, including when Plaintiff Martinez agreed to them, CYH's Terms of Use contained a mandatory arbitration provision, which stated as follows:

> # Disputes
>
> Any controversy, dispute or claim arising out of, or relating in any way to these Terms or your use of the Site or Service will be resolved by binding arbitration rather than in court.
>
> There is no judge or jury in arbitration, and court review of an arbitration award is limited. Your claims cannot be brought as a class action. However, an arbitrator can award on an individual basis the same damages and relief as a court. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
>
> To begin an arbitration proceeding, you must first send a scanned letter to Choose Your Horizon concerning your claim. The letter should be scanned and addressed to: **hello@chooseyourhorizon.com** . If Choose Your Horizon elects to begin an arbitration proceeding, it will send you a written letter to the most recent address we have on file or in our records for you. A letter, whether sent by you or by Choose Your Horizon, must: (i) describe the nature and basis of the claim or dispute; and (ii) set forth the specific relief sought. If Choose Your Horizon and you do not reach an agreement to resolve the claim within thirty (30) days after the letter is received, you or Choose Your Horizon may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by Choose Your Horizon or you prior to the arbitration shall not be disclosed to the arbitrator. To initiate arbitration, you may download a "demand for arbitration" form from the American Arbitration Association at www.adr.org.
>
> Choose Your Horizon and you each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class or representative action. If for any reason a claim proceeds in court rather than in arbitration, Choose Your Horizon and you each waive any right to a jury trial. Notwithstanding anything to the contrary herein, Choose Your Horizon and you

> agree that either party may bring suit in court to enjoin infringement or other misuse of the intellectual property rights of the other party.

*See* Holland Dec., ¶ 12, 16.[4]

## III. ARGUMENT

### A. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Two limitations exist on a court's power to exercise personal jurisdiction over a nonresident defendant: state personal jurisdiction rules and constitutional principles of due process. *See Sher v. Johnson*, 911 F.2d 1357, 1360–61 (9th Cir. 1990) (citation omitted). When no federal statute authorizes personal jurisdiction, a district court applies the law of the forum state. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Sher*, 911 F.2d 1357 (citation omitted). Due process necessitates that a nonresident defendant have "certain minimum contacts" with a forum state before that state can exercise personal jurisdiction over that defendant. *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (citation omitted). Personal jurisdiction exists if the defendant has sufficient contacts with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.*

---

[4] To the extent that the Holland Dec. relies on information from the internet digital archive known as the Wayback Machine, "[d]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to [Federal Rule of Evidence 201]." *See Yuksel v. Twitter, Inc.*, 22-CV-05415-TSH, 2022 WL 16748612, at *3 (N.D. Cal., Nov. 7, 2022) (collecting cases); *see also Yoon v. Meta Platforms, Inc.*, 24-CV-02612-NC, 2024 WL 5264041, at *3 (N.D. Cal., Dec. 30, 2024) ("Courts routinely take judicial notice of terms of service and other policies, including content from Internet Archive's Wayback Machine.") (citing *Zhang v. Twitter Inc.*, Case No. 23-cv-00980, 2023 WL 5493823, at *3 (N.D. Cal., Aug. 23, 2023)).

### 1. The Court Does Not Have General Personal Jurisdiction Over CYH Because CYH Is Not "At Home" In California

"There are two types of jurisdiction—general and specific." *LNS Enterprises*, 22 F.4th at 858 (citation omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] ... bases for general jurisdiction." *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). CYH is not incorporated in California and does not have its principal place of business in the state. Complaint ¶ 26. Outside these two "paradigms," the Supreme Court limits general jurisdiction to instances where the defendant's relationship with the forum is so continuous, regular, and systematic that the defendant can be fairly regarded "at home" there. *Daimler AG*, 571 U.S. at 127; *see also Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 791 (N.D. Cal. 2020) ("[G]eneral jurisdiction is not meant to provide many districts with jurisdiction over the same defendant. If general jurisdiction in one forum would subject the defendant to jurisdiction in many other forums, the exercise of such jurisdiction is likely improper."). The Supreme Court further held that general jurisdiction cannot be "available in every ... State in which [a defendant's] sales are sizable ... Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id*. at 139 (citation omitted); *see also Aldrich*, 484 F. Supp. 3d at 793 (Dismissing case against NCAA because, though 58 member institutions were located in California, plaintiffs failed to show "that the NCAA's contact with California is comparatively unique.") (collecting cases).

Plaintiffs may be attempting to assert general jurisdiction over CYH exists by alleging that "Defendant conducts substantial business in this District" and "derives substantial revenue from advertising it shows to its users in California." *See* Complaint ¶¶ 40-41. Those allegations are

conclusory and insufficient to establish general jurisdiction because they do not demonstrate CYH is at home in California, nor that its contact with California is in any way unique.

**2. The Court Does Not Have Specific Personal Jurisdiction Over CYH Because CYH Does Not Aim Conduct at California Giving Rise to Liability, And Any Forum-Related Conduct by CYH Is Unrelated**

Specific jurisdiction involves sufficient minimum contacts with a state that are relevant to the lawsuit. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The Ninth Circuit "uses the following three-part test to analyze 'whether a party's minimum contacts meet the due process standard for the exercise of specific personal jurisdiction': (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) [T]he claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) [T]he exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *LNS Enterprises LLC*, 22 F.4th at 859 (citation omitted). It is the plaintiff's burden to establish the first two prongs of the test. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017) (citation omitted).

The first prong of the minimum contacts test, purposeful direction, applies to suits such as this that sound in tort, while purposeful availment applies to contract actions. *See Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). "[S]howing that a defendant purposefully directed his conduct toward a forum state ... usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum ..." *Id*. at 803. To evaluate purposeful direction, courts in the Ninth Circuit apply the three-part test from *Calder v. Jones*, 465 U.S. 783 (1984). *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). To satisfy the *Calder* test, the defendant "must have: (1) committed an intentional act, which was (2)

expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* at 1156.

The conduct at issue in this case is use of website advertising software which allegedly discloses information to a third party. Therefore, to satisfy the *Calder* test, Plaintiffs must demonstrate CYH operated its website in a way "expressly aimed" at California. In such "website cases," operation of an interactive website does not, by itself, establish express aiming. What is needed is "something more—conduct directly targeting the forum." *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023) (citations omitted).

Plaintiffs do not allege "something more" by CYH directly targeting California that can establish express aiming. Instead, Plaintiffs impermissibly and generically allege that CYH "conducts substantial business in this District" and "derives substantial revenue from advertising it shows to its users in the state of California." *See* Complaint ¶¶ 40-41. However, CYH derives only 13% of its revenue from California, provides services nationally. *See* Holland Dec., ¶¶ 17-18. Plaintiffs also allege, without any factual foundation whatsoever, that CYH "intentionally hyper-targets advertising to California residents." *See* Complaint ¶ 42. However, CYH advertised in California in a substantially similar manner to all other states in which it actively provides services. *See* Holland Dec., ¶ 19. It follows that ERC does not have a California-specific website, because it does not have a California-specific business as a whole.

Such contacts fall far short of establishing express aiming, because there is no "forum-specific focus" to CYH's website. A number of recent cases make this clear. *See, e.g.*, *Kauffman v. The Home Depot, Inc.*, 2024 WL 221434, *2 (S.D. Cal., Jan. 19, 2024) (although defendant operated "numerous" stores in California and "integrate[d] the website with those stores," such conduct was not "express aiming" under the *Calder* test in website data disclosure cases); *Smith*

*v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951–52 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) ("[E]ven if the Healthcare Defendants knew that Facebook tracks users via "Share" and "Like" buttons, Plaintiffs' allegations do not support the conclusion that the Healthcare Defendants targeted their activities at Plaintiffs in California."); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210-12 (9th Cir. 2020) (district court did not have specific jurisdiction over foreign entity because the website at issue did not have a "forum-specific focus"); *Mikulsky v. Noom, Inc.*, 2023 WL 4567096 (S.D. Cal., July 17, 2023) (plaintiff failed to establish specific jurisdiction over defendant digital health platform that focused on weight loss because "the "complaint contains no allegations alleging how Defendant aimed any of its business at California."); *Dangaard v. Instagram, LLC*, 2023 WL 4869234, *3 (N.D. Cal., July 31, 2023) ("[T]he minimum contacts analysis examines the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there") (citation omitted); cf. *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011) (finding that the defendant had expressly aimed its website at California because it "had "a specific focus on the California-centered celebrity and entertainment industries"). Plaintiffs fail to demonstrate that CYH's website targeted California in any way differently than any other state in which CYH operates. Thus, Plaintiffs cannot establish CYH expressly aimed its conduct at California versus any of those other states.

Defendant also asserts that CYH "is able to hyper-target users with advertising" through the collection of user data. *See* Complaint, ¶¶ 41-42. However, if "geo-located advertisements constituted express aiming, [a defendant] could be said to expressly aim at any forum in which a user views the website." *See AMA Multimedia, LLC*, 970 F.3d at 1211. "To find specific jurisdiction based on this would run afoul of the Supreme Court's directive in *Walden* and

"impermissibly allow[ ] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

Finally, the allegation that the Website allows California residents to place orders in California does not give rise to personal jurisdiction. Once again, there is nothing about that allegation that differentiates California from any other state in which CYH does business. *See Kauffman*, 2024 WL 221434, at *2 (finding that, despite allegations that the plaintiff ordered goods from the defendant's website that were shipped to California and that the defendant knew the plaintiff was in California at the time of the alleged data recording, the plaintiff failed to carry his burden to show that the defendant "expressly aimed" its website at California in a way that differentiated it from any other state).

Moreover, this lawsuit does not relate to the products shipped to California; instead, it relates to alleged dissemination of website user information. Plaintiffs' proposed class definition drives this point home. Plaintiffs assert a putative class action on behalf of "all persons who, during the class period, had their personally identifiable information or protected health information improperly disclosed to third party entities, as a result of using the Website while located in California." *See* Complaint, ¶ 131. The class definition gives no consideration to whether putative class members ordered any goods from CYH. Thus, allegations regarding placement of orders or shipment of goods to California have no bearing on personal jurisdiction because they fail the second element of the minimum contacts test, that the claim must be one which arises out of or relates to the defendant's forum-related activities. *See Kauffman*, 2024 WL 221434, at *3 (The plaintiff's purchase of a physical product did not cause his data capture; that began as soon as he entered the website; therefore, his "claims do not 'arise out of' his online purchase.").

Because CYH is not subject to general personal jurisdiction and it does expressly aim any conduct at California which allegedly gives rise to liability, this case must be dismissed for lack of personal jurisdiction.

### B. PLAINTIFF MARTINEZ'S CLAIMS ARE SUBJECT TO A MANDATORY ARBITRATION PROVISION AND THE COURT SHOULD COMPEL ARBITRATION OF HER CLAIMS

#### 1. Arbitration Agreements are Presumptively Enforceable.

Congress enacted the FAA to promote arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011); *see also Epic Sys. Corp. v. Lewis*, 183 S. Ct. 1612, 1621-22 (2018) (describing history, purpose, and scope of FAA). "Section 2 of the FAA 'requires courts to enforce agreements according to their terms' in order 'to place an arbitration agreement upon the same footing as other contracts ... and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.'" *O'Connor v. Uber Tech., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018) (cleaned up). In fact, the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24 (1983). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. at 24–25.

"[A]n agreement to arbitrate is a matter of contract." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Accordingly, contractual arbitration agreements must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." *See O'Connor v. Uber Tech., Inc.*, 904 F.3d at 1093. (quoting 9 U.S.C. § 2); *see also Newton v. Am. Debt Servs., Inc.*, 549 Fed. App'x. 692, 693 (9th Cir. 2013). "[W]here a contract

contains an arbitration clause," moreover, "courts apply a presumption in favor of arbitrability ... and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Gutierrez v. FriendFinder Networks Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *2 (N.D. Cal. May 2, 2019) (quoting *Wynn Resorts v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x. 740, 742 (9th Cir. 2012)).

The FAA requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement. *See* 9 U.S.C. §§ 3, 4. Therefore, "[t]he court's role under the FAA is limited to determining 'two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.'" *Gutierrez*, 2019 WL 1974900, at *2 (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (quoting *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted)). Respectfully, and as discussed in more detail below, CYH submits that the answer to both questions is clear and that this Court must, as a result, enforce the Terms of Use and compel Plaintiff Martinez to arbitrate her claims on an individual basis.

Furthermore, "[i]f all claims in the case are subject to a valid arbitration agreement, the Court may dismiss or stay the case." *Regan v. Pinger, Inc.*, No. 20-CV-02221-LHK, 2021 WL 706465, at *3 (N.D. Cal. Feb. 23, 2021) (quoting *Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *7–8 (N.D. Cal. Apr. 6, 2011)); *see also Sparling v. Hoffmann Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (explaining that when arbitration is mandatory, the court has discretion to stay or dismiss the case). CYH therefore respectfully request that this Court dismiss this action or, in the alternative, stay the proceedings pending the outcome of the arbitration.

### 2. There is an Enforceable Arbitration Agreement Between CYH and Plaintiff Martinez and the Agreement Covers the Instant Dispute.

#### *a) There is an Agreement to Arbitrate Between CHY and Plaintiff Martinez*

In determining whether parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citation omitted). Such principles, and a number of factually similar cases, demonstrate that the parties did mutually agree on a contract including a mandatory arbitration provision.

At issue here is "whether the parties have mutually assented to a contract term," and specifically the mandatory arbitration provision contained in the Website's Terms of Use. *See id*. The Terms of Use apply Texas law. *See* Holland Dec., ¶ 13. Whether Texas or California law applies, however, makes no difference because both states' laws have substantially similar rules for determining whether parties to a contract have mutually assented to a contract terms. In both states, the parties must manifest their mutual assent to the terms of the agreement. *See Southwest Airlines Co. v. BoardFirst, L.L.C.*, 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex., Sept. 12, 2007) ("[U]nder Texas law ... For a contract to exist, the parties must manifest their mutual assent to be bound by it.") (citation omitted); *see also Berman*, 30 F.4th at 855 (citing *Specht v. Netscape Communications Corp*., 306 F.3d 17, 29 (2d Cir. 2002) (applying California law)).

"These elemental principles of contract formation apply with equal force to contracts formed online." *See Berman*, 30 F.4th at 855-856. "Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id*. at 856.

Generally, there are four types of agreements used by websites classified by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps. *See Nail v Lens.com, Inc.*, 2:24-CV-02531-SB-E, 2024 WL 3723912, at *3 (C.D. Cal., June 20, 2024) (citing *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)).

The agreement at issue here is a clickwrap agreement. "[A] clickwrap agreement, requires users to click on an "I agree" box after being presented with a list of terms and conditions of use." *See Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1014 (9th Cir 2024) (citation omitted); *see also Berman*, 30 F.4th at 856 ("The most straightforward application of these principles in the online world involves so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed.") (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014)).

Although Plaintiff Martinez asserts that she was not put on notice of the Terms of Use based on a photo of the Purchase Page captured by Plaintiff's counsel on March 11, 2024 (see Complaint, ¶ 119), the Purchase Page was updated on March 28, 2024 to require a Website user to affirmatively check a box agreeing to the Terms of Use before making a purchase. *See* Holland Dec., ¶ 7 and Exhibit A thereto. Plaintiff Martinez alleges that the visited the Website and made purchases after that date. *See* Complaint, ¶¶ 28, 118. Moreover, the Complaint does not address the fact that Plaintiff Martinez also affirmatively checked a box indicating that she agreed to the Terms of Use, including the arbitration provision, when she booked an appointment with a psychiatric clinician on the Consultation Scheduling Page. *Id.*, ¶¶ 8-11 and Exhibit B thereto.

Because Plaintiff Martinez had to explicitly and affirmatively click a box agreeing to CYH's Terms of Use on two separate occasions as described above, she assented to a clickwrap agreement. Moreover, the Terms of Use contained a binding agreement to arbitrate. *See James v. Amazon Logistics, Inc.*, 22-CV-05318-KAW, 2023 WL 3728694, at *1 (N.D. Cal., Jan. 26, 2023) (holding that terms of service which included an arbitration clause stating that any dispute "will be resolved by binding arbitration, rather than in court" was a binding agreement to arbitrate).

Because they evince mutual assent to be bound through the website user's affirmative consent, "[c]ourts routinely find clickwrap agreements enforceable." *See Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 513 (9th Cir 2023); *see also Berman*, 30 F.4th 849, 856 (9th Cir. 2022) (same) (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Keebaugh*, 100 F.4th at 1014 (same); *Cheng v. PayPal, Inc.*, 21-CV-03608-BLF, 2022 WL 126305, at *3 (N.D. Cal., Jan. 13, 2022) (the plaintiff had to check a box indicating that he had read and agreed to a user agreement containing an arbitration clause which "was thus a presumptively valid clickwrap agreement").

Moreover, the existence of the Terms of Use was reasonably communicated to Plaintiff Martinez and other Website users who ordered products on the Website as they were in blue and hyperlinked, and located directly above or beside the boxes Plaintiff Martinez checked agreeing to the Terms, thus further reinforcing the validity of the agreement. *See* Holland Dec. at Exhibits A and B; *see also Moyer v Chegg, Inc.*, 22-CV-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal., July 25, 2023) (collecting cases demonstrating that courts have found arbitration agreements valid where users "are notified of the existence of the website's terms of use and advises a user that by making some type of affirmative act, often by clicking a button," and "where the existence of the terms was reasonably communicated to the user"); *see also Open Book Theatre Co. v. Brown*

*Paper Tickets, LLC*, 3:24-CV-0076-AGS-VET, 2024 WL 4230479, at *3 (S.D. Cal., Sept. 18, 2024) (hyperlinks are customarily made "readily apparent" through "use of a contrasting font color").

Because a mandatory arbitration provision is contained in CYH's Terms of Use on the Website and the Plaintiff Martinez assented to the Terms of Use in a clickwrap agreement, the Court should find that an agreement between CYH and Plaintiff Martinez to arbitrate exists.

***b) The Agreement Covers the Instant Dispute***

As described above, the Terms of Use state that "[a]ny controversy, dispute or claim arising out of, or relating in any way to these Terms or your use of the Site or Service will be resolved by binding arbitration rather than in court." This arbitration provision covers the claims Plaintiff Martinez has asserted in the instant action; accordingly, under the FAA, this Court must enforce the Agreement and compel Plaintiff Martinez to arbitrate her claims.

Plaintiff Martinez's own allegations conclusively demonstrates that her claims, all of which relate to the Defendants' alleged use of website technologies which supposedly "intercept communications sent and received by Plaintiff and Class Members" through the "Site" fall within the bounds of the mandatory arbitration provision. *See* Complaint, ¶¶ 24-25; *see also* Holland Dec., ¶ 14. Moreover, Plaintiff's Complaint confirms that her claims arise out of or relate to CYH's Services, which are defined as professional medical services and/or non-clinical Website services *See* Holland Dec., ¶ 15. In particular, Plaintiff alleges the following:

- "This is a class action lawsuit brought on behalf of all residents who have accessed and used chooseketamine.com (the "Website"), a website which Defendant owns and operates." Complaint ¶ 24.

- "In or around April 2024, Plaintiff Martinez visited the Website and purchased low-dose ketamine therapy as a medical treatment. As part of the purchase process, as is the case with all purchases on the Website, Plaintiff Martinez answered a series of questions related to her mental and physical health for the purpose of having a medical professional

determine whether ketamine therapy is appropriate for her medical symptoms." Complaint ¶ 28.

- "After making this purchase, [Plaintiff Martinez] had a mandatory appointment with a "psychiatrist clinician" to determine if ketamine therapy was an appropriate treatment before the purchased medication was shipped to her." Complaint ¶ 28.

- "Defendant aids[,] employs, agrees, and conspires with Meta, Google, and Twilio (together, the "Third Parties") to intercept communication containing protected medical information. Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions." Complaint ¶ 25.

- "Defendant aided and assisted Third Parties with intercepting Plaintiff Martinez's communications, including those that contained personally identifiable information ("PII"), protected health information ("PHI"), and related confidential information." Complaint ¶ 30.

- Plaintiff Martinez asserts claims based on alleged violations of the California Invasion of Privacy Act and the California Confidentiality of Medical Information Act, together with a claim for invasion of privacy under California's constitution based on the alleged transmission of data to third parties related to CYH's medical services and Website services. *See* Complaint ¶¶ 140-167.

In sum, taking Plaintiff Martinez's allegations as true for the purposes of this motion, there is no question that Plaintiff Martinez's claims arising out of or relating in any way to her use of the Website and/or CYH's Services, and are therefore covered by the binding arbitration provision.

Courts have consistently upheld arbitration agreements in the context of data disclosure cases. *See, e,g, In re Ring LLC Privacy Litig*., CV1910899MWFRAOX, 2021 WL 2621197, at *6 (C.D. Cal., June 24, 2021) (granting motion to compel arbitration over claims involving defendant allegedly sharing personal identifying information with third parties due to presence of clickwrap agreements); *Heller v. Rasier, LLC*, No. CV178545PSGGJSX, 2020 WL 413243, at *1 (C.D. Cal. Jan. 7, 2020) (granting motion to compel claims arising from data breach where riders assented to agreement including arbitration clause as condition of accepting ride); *I.C. v. Zynga, Inc.*, No. 20-CV-01539-YGR, 2021 WL 3271187, at *1 (N.D. Cal. July 30, 2021)

(granting motion to compel arbitration of claims arising from data breach where plaintiffs accepted website Terms of Service which included arbitration provision).

Given the presumption of enforceability of arbitration agreements in similar contexts, the fact that Plaintiffs' claims fall within the scope of the mandatory arbitration provision set forth in the Terms of Use, and the absence of any evidence of unconscionability, Plaintiff Martinez should be compelled to attend arbitration.

## IV. CONCLUSION

For all the foregoing reasons, Defendant Choose Your Horizon, Inc. respectfully request that its Motion to Dismiss, or, in the alternative, its Motion to Compel Arbitration be granted and that this action be dismissed or, in the alternative, Plaintiff Martinez's claims should be stayed pending the outcome of the arbitration.

Dated: February 12, 2025

/s/ *James F. Monagle*
James F. Monagle, Esq.
jmonagle@mullen.law
**MULLEN COUGHLIN LLC**
500 Capital Mall, Suite 2350
Sacramento, CA 95814
Telephone: (267) 930-1529

*Attorneys for Defendants*

**PROOF OF SERVICE**

The undersigned attorney hereby certifies that, on February 12, 2025, I served the foregoing Notice of Motion and Memorandum and Points of Authorities in Support of Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, or, in the Alternative, to Compel Arbitration via email and ECF upon all counsel of record.

Dated: January 15, 2025

/s/ *James F. Monagle*
James F. Monagle