**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

KAREN MARTINEZ and ELI SILVA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CHOOSE YOUR HORIZON, INC.,

Defendant.

Case No. 3:24-cv-02798-LB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR COMPEL ARBITRATION**

Date: May 8, 2025
Time: 9:30 a.m.
Courtroom: B
Judge: Hon. Laurel Beeler

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT .......... 2

II. DEFENDANT CANNOT COMPEL PLAINTIFF MARTINEZ TO ARBITRATION .......... 4

A. The Arbitration Agreement Does Not Apply Retroactively To The Pre-Arbitration Wiretapping Plaintiff Martinez's Confidential Communications and Disclosure of his Medical Information .......... 4

B. Defendant Has Not Met Its Burden To Show Plaintiff Martinez's Claims Are Within The Scope Of The Arbitration Agreement .......... 8

C. The Arbitration Agreement Is Unconscionable and Unenforceable .......... 10

1. The Arbitration Agreement Is Procedurally Unconscionable .......... 10

2. The Arbitration Agreement is Substantively Unconscionable .......... 11

CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A & M Produce Co. v. FMC Corp.*,
135 Cal.App.3d (1982) ..... 11

*Amazon Payments, Inc. v. Penson & Co. LLC*,
2024 WL 3152377 (N.D. Cal. June 24, 2024) ..... 3

*Armendariz v. Foundation for Health Psychcare Srvcs., Inc.*,
6 P.3d 669 (Cal. 2000) ..... 10

*Bryden v. Verizon California Inc.*,
2016 WL 3186913 (Cal. Ct. App. May 31, 2016) ..... 6

*Castro v. ABM Industries, Inc.*,
2018 WL 2197527 (N.D. Cal. May 14, 2018) ..... 6

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) ..... 6

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) ..... 9

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) ..... 9

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) ..... 8

*Fisher v. MoneyGram Int'l, Inc.*,
66 Cal. App. 5th 1084 (2021) ..... 12

*Gove v. Career Systems Development Corp.*,
689 F.3d 1 (1st Cir. 2012) ..... 7

*Gutierrez v. Autowest, Inc.*,
114 Cal. App. 4th 77 (2003) ..... 11

*Hendrick v. Brown & Root, Inc.*,
50 F. Supp. 2d 527 (E.D. Va. 1999) ..... 5

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ..... 2

*Howard v. Goldbloom*,
30 Cal. App. 5th 659 (2018) ..... 9

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 8

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) .......... 9

*Klay v. All Defendants*,
389 F.3d 1191 (11th Cir. 2004) .......... 5

*Long v. Fidelity Water Systems, Inc.*,
2000 WL 989914 (N.D. Cal. May 26, 2000) .......... 5

*Mason v. Telefunken Semiconductors America, LLC*,
797 F.3d 33 (1st Cir. 2015) .......... 7

*Merrimack College v. KPMG LLP*,
88 Mass. App. Ct. 803 (2016) .......... 5

*Morse v. ServiceMaster Global Holdings Inc.*,
2012 WL 4755035 (N.D. Cal. Oct. 4, 2012) .......... 5, 6

*Oceanside Health Prods., LLC v. Dvir Deri, LLC*,
2024 WL 2269270 (9th Cir. May 20, 2024) .......... 3

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) .......... 11

*Parada v. Superior Ct.*,
176 Cal. App. 4th 1554 (2009) .......... 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .......... 8

*Rice v. Downs*,
248 Cal. App. 4th 175 (2016) .......... 8

*Russell v. Citigroup*,
748 F.3d 677 (6th Cir. 2014) .......... 6

*Sandquist v. Lebo Automotive, Inc.*,
1 Cal. 5th 233 (2016) .......... passim

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 9

*Security Watch, Inc. v. Sentinel Systems, Inc.*,
176 F.3d 369 (6th Cir. 1999) .......... 5

*Solo v. United Parcel Service Co.*,
947 F.3d 968 (6th Cir. 2020) .......... 7

*Sonic-Calabasas A. Inc. v. Moreno*,
311 P.3d 184 (Cal. 2013) .......... 10

*Sunday Red, LLC v. Tigeraire, Inc.*,
2024 WL 5339390 (C.D. Cal. Dec. 13, 2024) .......... 3

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 3

*Ting v. AT&T,*
319 F.3d 1126 (9th Cir. 2003) .......... 7

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) .......... 9

*Zarif v. Hwareh.Com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 3, 4

**STATUTES**

Cal. Civ. Code § 1654 .......... 6

Plaintiffs Karen Martinez and Eli Silva ("Plaintiffs") respectfully submit this opposition to Defendant Choose Your Horizon, Inc.'s ("Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint or Compel Arbitration (ECF No. 39) (the "Motion" or "MTD").

**INTRODUCTION**

Defendant's Motion rests upon an attenuated jurisdictional challenge and a motion to compel only one of the Plaintiffs to seek relief in the secrecy of arbitration. Both arguments are meritless.

Defendant ships physical medication to patients in California and provides them with follow-up medical appointments that are available for them to participate in while in California. These activities are the core of Defendant's business and shipments to California make up 13% of its total revenue. Given these pervasive activities, Defendant has availed itself of California's market and cannot say that it could not anticipate being haled into court in California.

Defendant also cannot compel Plaintiff Martinez to arbitration. First, all of the illegal interceptions alleged in Plaintiffs' First Amended Complaint (ECF No. 35) (the "FAC") happen *before* Plaintiff Martinez could have agreed to the Terms of Use, as the hyperlink to which is located on the final checkout screen. Defendant's arbitration agreement does not contain any language indicating that the arbitration agreement applies retroactively and, thus, does not apply to claims relating to the disclosures at issue here. Further, Plaintiff Martinez's claims are not within the scope of the arbitration agreement. Finally, even if Plaintiff Martinez had agreed, the arbitration agreement is unconscionable and unenforceable.

For the following reasons, Defendant's motion should be denied.

## ARGUMENT

## I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Defendant argues Plaintiffs' claims should be dismissed for lack of personal jurisdiction. MTD at 5. This is wrong. Defendant is correct to apply the *Calder* test, but is mistaken in its application in the Ninth Circuit.[1] *Id.* at 8.

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023), cited by Defendant, is binding. *Id.* at 8. There, the Ninth Circuit held the *Calder* test had been satisfied for a health and wellness website that shipped products to California. *Herbal Brands*, 72 F.4th at 1091. After finding that "Plaintiff easily satisfies the first and third elements of the *Calder* effects test[,]" (*id.*) the Court found that the Defendant's conduct directly targeted the forum:

> [W]e conclude that the sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum, provided that two key elements are present. First, the sales must occur as part of the defendant's regular course of business instead of being "random, isolated, or fortuitous." When an online sale occurs as part of a defendant's regular course of business, it "arises from the efforts of the [seller] to serve directly or indirectly[ ] the market for its product ...," and the defendant "should reasonably anticipate being haled into court" where the product is sold…
>
> Second, the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce…
>
> Plaintiff's allegations meet this standard. First, Defendants allegedly used their Amazon storefronts—their means of conducting regular business—to make product sales to Arizona residents. Plaintiffs specifically allege that Defendants operated their storefronts under the names of business entities, offered a variety of Herbal Brands products on their storefronts, and conducted a high volume of sales throughout the country. Second, Defendants exercised control over distribution: they created and maintained a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states…
>
> The outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum. Drawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law."

*Id.* at 1094-1095 (internal citations omitted).

---

[1] Defendant only argues that prong two of the *Calder* test is not satisfied and, thus, has waived any argument that Plaintiffs have failed to satisfy prong one or three. For the sake of completeness, Plaintiffs argue here that they have satisfied prongs one and three.

So too here. The FAC alleges that Defendant uses a website it owns and operates to ship physical medication and provide live therapy appointments to California residents. FAC ¶¶ 51-53. This is "part of Defendant's regular course of business" as its primary mode of operation is to sell prescription ketamine treatment from its website and ship the ketamine prescriptions to consumers. *Id*. Defendant admits that 13 percent of the business from its website involves shipping medication into California. MTD at 8. This is more than enough for Defendant to have a reasonable expectation of being haled into court in California.

Numerous courts have found specific jurisdiction for similar contact with California. *Oceanside Health Prods., LLC v. Dvir Deri, LLC*, 2024 WL 2269270, at *2-*3 (9th Cir. May 20, 2024) ("Here, the 'express aiming' element is satisfied for the same reasons articulated in *Herbal Brands.* First, the online sales of Detoxify products are alleged to have occurred in the regular course of Defendants' business… Second, Defendants exercised control over the ultimate distribution of their products in California."); *Zarif v. Hwareh.Com, Inc.*, 2025 WL 486317, at *4 (S.D. Cal. Feb. 13, 2025) ("[T]he sale of products to forum residents would provide the requisite "something more" even if Health Warehouse had not marketed its website to California residents."); *Sunday Red, LLC v. Tigeraire, Inc.*, 2024 WL 5339390, at *4 (C.D. Cal. Dec. 13, 2024) ("Here, the court finds both of these elements are satisfied. Although California sales constitute only a small portion of Tigeraire's overall sales, the evidence reflects that Tigeraire has sold products into California as part of its regular course of business for multiple years."); *Amazon Payments, Inc. v. Penson & Co. LLC*, 2024 WL 3152377, at *2 (N.D. Cal. June 24, 2024) ("Yun Duan "expressly aimed" its conduct at California by selling its products via Amazon and causing those products to be delivered in the state during its regular course of business."); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742 (N.D. Cal. 2023) ("Taking the allegations of Swarts's complaint as true, as it must, the Court finds that he sufficiently alleges that Home Depot sold a physical product to him via its interactive website. Therefore, Swarts has satisfied the express aiming element, and has established that Home Depot purposefully directed its conduct at the forum state.").

Defendant is mistaken in arguing that defendants are not subject to the *Calder* test in cases involving the interception of confidential communications. MTD at 10. The inquiry is whether Defendant purposefully directed its activities to California such that it could reasonably anticipate being haled into court in California, not a test based on the type of claim asserted. Further, courts have applied the *Calder* test in cases with identical claims. *See Zarif v. Hwareh.Com, Inc.*, 2025 WL 486317, at *4 (S.D. Cal. Feb. 13, 2025) (applying the *Calder* test to find personal jurisdiction in a case involving a CIPA claim).

In addition, the FAC contains clear allegations of Defendant's purposeful direction of advertising specifically to California residents. FAC ¶¶ 41-42. This bolsters the allegation that Defendant attempted to specifically avail itself of the benefits of the California market for ketamine treatment and, therefore, should reasonably know it could be sued in California for injuries caused to California consumers.

## II. DEFENDANT CANNOT COMPEL PLAINTIFF MARTINEZ TO ARBITRATION

Defendant next argues there is an agreement to arbitrate between CHY and Plaintiff Martinez. MTD at 13. This is wrong.[2]

### A. The Arbitration Agreement Does Not Apply Retroactively To The Pre-Arbitration Wiretapping Plaintiff Martinez's Confidential Communications and Disclosure of his Medical Information

Defendant contends that because "Plaintiff Martinez assented to the Terms of Use in a clickwrap agreement, the Court should find that an agreement between CYH and Plaintiff Martinez to arbitrate exists." MTD at 16. But Defendant ignores a simple fact: *all* of the improper collection of Plaintiff Martinez's confidential communications, personally identifying information, and protected health information occurred *before* Plaintiff Martinez would have agreed to the Terms of Use, which appear for the first time on the purchase page at the end of the screening and purchase process. MTD at 14; *see also* FAC ¶ 86 ("Specifically, when a patient of Defendant visits the Website to schedule an appointment, Meta deploys the Facebook Pixel with a pixel ID number of 598769757910245, and automatically receives the page URL, which discloses the treatment

[2] Defendant does not argue that Plaintiff Silva is subject to an arbitration agreement.

sought and the patient's Facebook ID via the c_user cookie."); *id.* ¶ 97 ("For example, when a patient clicked on the link to purchase a treatment on Defendant's Website, the code that was generated related to Google Analytics showed the appointment and state of residence of the user (entered earlier in the process) and various 'cookies' that Google used to track individual users."); *id*. ¶ 116 ("Nowhere in the process of obtaining Ketamine therapy, from the initial landing page to the end purchase page, were Plaintiffs ever put on notice of any documents that would put them on notice of any privacy policy, terms of use, or arbitration agreement.").

*First*, "[t]he FAA recognizes that agreements to prospectively arbitrate future disputes, as well as agreements to retroactively arbitrate past or present disputes, are enforceable. However, *the act explicitly distinguishes between the two*." *Long v. Fidelity Water Systems, Inc.*, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000) (emphasis added). Thus, for an arbitration clause to apply retroactively, it must "clearly and unequivocally" indicate the same. *Id.*, at *4. Defendant's arbitration clause does not contain any explicit retroactive language, and so does not meet this bar. *Id.*, at *3 ("Even assuming Mr. Continolo is deemed to have agreed to the arbitration provision, defendants[] offer no justification for holding that he agreed to arbitrate acts that occurred before the effective date of that agreement."); *Morse v. ServiceMaster Global Holdings Inc.*, 2012 WL 4755035, at *4 (N.D. Cal. Oct. 4, 2012) (finding the term "any and all claims" was "not retroactive on its face" because the term referred to "the *material* scope of the arbitration agreement, not *temporal* scope") (emphasis in original); *Merrimack College v. KPMG LLP*, 88 Mass. App. Ct. 803, 806-807 (2016) (denying retroactive application of arbitration clause and noting "[h]ad KPMG wanted to insist that Merrimack forfeit its existing rights to pursue a civil action for past disputes, it easily could have included language expressly stating that the dispute resolution provision had retroactive application"); *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 535 (E.D. Va. 1999) ("[N]one of the text of that section provides that the DRP reaches back in time to require an employee to arbitrate a claim which had accrued before the contract was signed or before the DRP even took effect."); *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 374 (6th Cir. 1999) ("Had the parties intended to apply the new ADR processes to disputes arising under the previous contracts, we believe they would have done so explicitly."); *Klay v. All*

*Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) ("Because arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties."); *Bryden v. Verizon California Inc.*, 2016 WL 3186913, at *3 (Cal. Ct. App. May 31, 2016) (affirming denial of motion to compel arbitration where "because [the] agreement did not contain an arbitration clause until many years after Bryden first subscribed, the [trial] court concluded it should not apply retroactively and therefore also could not provide a basis for compelling arbitration"); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966-967 (2015) ("[T]here is nothing in the language of either the bylaws generally, or this specific amendment, that states it is intended to have such a retroactive effect.").

To the contrary, the Terms of Use, taken as a whole, evidence an intention that they apply prospectively, rather than retroactively. The Terms of Use make use of the present tense throughout, including in the arbitration clause itself. Holland Decl. ¶ 12(governing disputes "*arising out of* or *relating* in any way.") (emphasis added). The use of the present tense "suggests that the clauses govern present or future conduct, not past conduct." *Castro v. ABM Industries, Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) ("[T]he CBAs' use of the present tense 'arise' suggests that the clauses govern present and future, but not past, conduct."); *see also Morse*, 2012 WL 4755035, at *5 ("The use of the present participle 'arising' makes it clear that it applies to claims that may arise going forward, not claims that have already accrued."); *Russell v. Citigroup*, 748 F.3d 677, 679 (6th Cir. 2014) ("The use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggest[s] that the contract governs only disputes that begin—that arise—in the present or future. The present tense usually does not refer to the past.").

*Second*, to the extent the arbitration clause is ambiguous as to whether it applies retroactively, that ambiguity must be construed against Defendant as the drafter of the agreement. "Ambiguities in written agreements are to be construed against their drafters." *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 247 (2016) (citing Cal. Civ. Code § 1654). And as the California Supreme Court has noted:

> This general principle of contract interpretation applies equally to the construction of arbitration provisions. Where the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation.

*Sandquist*, 1 Cal. 5th at 248.

"Moreover, the rule requiring the resolution of ambiguities against the drafting party applies with peculiar force in the case of a contract of adhesion." *Id.* (cleaned up); *see also Gove v. Career Systems Development Corp.*, 689 F.3d 1, 4-5 (1st Cir. 2012) ("[T]he rationale for interpreting ambiguities against the drafter is particularly compelling in contracts where one party had little or no bargaining power. Thus, where the parties are in unequal bargaining positions, such as where a standard-form, printed contract is submitted to the other on a 'take it or leave it' basis … the provisions of the contract are generally construed to meet the reasonable expectations of the party in the inferior bargaining position.") (cleaned up).

The California Supreme Court's proclamation applies here. At best, the arbitration clause is ambiguous as to whether it applies retroactively because it does not explicitly indicate its temporal scope one way or the other. *See Mason v. Telefunken Semiconductors America, LLC*, 797 F.3d 33, 38 (1st Cir. 2015) ("California follows the familiar rule that an ambiguity arises if, when viewed in context, a contract term is equally susceptible to more than one reasonable meaning.").

Further, the Terms of Use are a "contract of adhesion" because they are "a standardized contract, which, imposed and drafted by the party of superior bargaining strength [*i.e.*, Choose], relegates to the subscribing party [*i.e.*, Plaintiffs] only the opportunity to adhere to the contract or reject it." *Ting v. AT&T,* 319 F.3d 1126, 1148 (9th Cir. 2003). Accordingly, under California law, this ambiguity must be construed "with peculiar force" against Defendant and in deference to Plaintiffs' interpretation that the arbitration clause is not retroactive. Defendant's cited policy favoring arbitration "cannot bridge a textual gap" and is no "substitute for party agreement." *Solo v. United Parcel Service Co.*, 947 F.3d 968, 973 (6th Cir. 2020).

**B. Defendant Has Not Met Its Burden To Show Plaintiff Martinez's Claims Are Within The Scope Of The Arbitration Agreement**

Even assuming the arbitration agreement does apply retroactively (it does not) Defendant must still show Plaintiff Martinez's claims fall within the scope of the arbitration clause. It does not.

"California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 971-72 (1997) (cleaned up). However, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016). Indeed, the California Supreme Court has mandated that where, as here, "the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed *against the drafter's interpretation and in favor of the nondrafter's interpretation.*" *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248 (2016) (emphases added). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added). With these principles in mind, Defendant cannot show Plaintiff Martinez's claims are encompassed by the arbitration clause.

The arbitration clause in the Terms of Use encompasses "[a]ny controversy, dispute or claim arising out of, or relating in any way to these Terms or your use of the Site or Service." Holland Decl. ¶ 12. The Ninth Circuit's decision in *Jackson* is binding and instructive. In that case, Amazon's arbitration clause encompassed "any dispute or claim arising out of or relating in any way to this Agreement, including participation in the program or performance of services." *Jackson*, 65 F.4th at 1095 (cleaned up). Despite this purportedly broad language, the Ninth Circuit found that claims based on Amazon's surveillance of Facebook groups solely made up of Amazon Flex drivers were not arbitrable because "Amazon's alleged misconduct existed independently of

the contract and therefore fell outside the scope of the arbitration provision." *Id.* at 1104. Specifically, the Ninth Circuit rejected a but-for causation argument for relation that "because Amazon would not have conducted its spying operations if Jackson had not been a Flex driver, the dispute must be arbitrable." *Id.* at 1103. Instead, the Ninth Circuit held the claims "existed independently" because "even if Jackson had no contract with Amazon but had been permitted to join the groups for some other reason, he would be able to bring the same claims for invasion of privacy." *Id.* at 1103-04.

*Jackson* also follows a long line of holdings from the Second, Fifth, Ninth, and Eleventh Circuits that rejected application of a broad arbitration clause to claims, like those here, that were independent of any contract. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183-84 (2d Cir. 2021); *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009); *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011). As these circuits have explained, the claims in each of these cases were not arbitrable because "the defendant could have engaged in the same conduct even in the absence of any contractual … relationship with the plaintiff, and a third party could have brought the same claims [] based on virtually the same alleged facts." *Welch*, 871 F.3d at 799 (cleaned up). Instead, claims must have "some direct relationship" or "direct connection" with even the broad language of a clause; "otherwise, the term would stretch to the horizon and beyond" or "be meaningless." *Doe*, 657 F.3d at 1218-19.

So too here. Plaintiff Martinez's claims involve Defendant's sharing of her personally identifiable information and confidential communications with a third party. *See generally*, ECF No. 35. It has no direct relationship to Defendant's ketamine treatment services. Indeed, Plaintiff Martinez would still have a claim no matter how Defendant chose to service its ketamine treatment. Further, the claims are predicated on the interception of Plaintiff Martinez's communications and health information, not on her use of the therapeutic services.

Thus, Plaintiff Martinez's claims exist independently of and are "not dependent on [and therefore, do not relate to] the terms of the contract." *Jackson*, 65 F.4th at 1102; *see also Howard v. Goldbloom*, 30 Cal. App. 5th 659, 670 (2018) (finding claim was not arbitrable because

"Defendants' fiduciary duties to minority shareholders and alleged wrongs exist independently of any employment relationship between Howard and Kaggle."). Further, to the extent there is ambiguity in the Terms of Use concerning whether Plaintiff Martinez's claims fall within the scope of the arbitration clause, "ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." *Sandquist*, 1 Cal. 5th at 248.

### C. The Arbitration Agreement Is Unconscionable and Unenforceable

Finally, to the extent the Court finds Plaintiff Martinez entered into an arbitration agreement with Defendant, the Court still should find that she is not required to arbitrate her claims because the arbitration provision is unconscionable. Under California law, unconscionability is a valid defense to a motion to compel arbitration. *Sonic-Calabasas A. Inc. v. Moreno*, 311 P.3d 184, 201 (Cal. 2013). For an arbitration agreement to be unconscionable, the party opposing arbitration must show that the agreement is both procedurally and substantively unconscionable. *Armendariz v. Foundation for Health Psychcare Srvcs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). However, procedural and substantive unconscionability need not be present in the same degree. *Id.* Thus, the more substantively oppressive a contract, the less evidence is needed of procedural unconscionability and vice versa. *Id.* Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. *Id.* Substantive unconscionability focuses on overly harsh or one-sided results. *Id*.

#### 1. The Arbitration Agreement Is Procedurally Unconscionable

To the extent Plaintiff Martinez entered into an arbitration agreement with Defendant, the agreement is procedurally unconscionable. First, the agreement was one of adhesion. *See id*. Defendant cannot dispute this. Plaintiff Martinez had no ability to negotiate the terms of the arbitration provision. If Plaintiff Martinez wanted to purchase a healthcare product from Defendant, she had to agree to Defendant's terms.

Further, Defendant hid the fact that its Terms of Use contained an arbitration provision. "Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is

otherwise beyond the reasonable expectation of the weaker party." *Parada v. Superior Ct.*, 176 Cal. App. 4th 1554, 1571 (2009); *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 128 (2019) (concluding procedural unconscionability was present where provisions were "visually impenetrable" and dense*); see also A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d at 490 (1982) (finding procedural unconscionability of consequential damage provision contained in middle of last page of an agreement in inconspicuous font). Here, there is clear procedural unconscionability. The first page and introductory paragraphs of the Terms of Use make no reference to an arbitration provision. Instead, the arbitration agreement is hidden on an unknown page of the document, which contains 26 distinct subsections.[3] What is more, the language relating to the arbitration agreement, when it does appear, is not in bold, capital letters, or presented in any other manner which sets the arbitration agreement apart from the massive amount of plain text in the document.

**2. The Arbitration Agreement is Substantively Unconscionable**

The arbitration agreement is also substantively unconscionable. "[I]t is unconscionable to condition that [arbitration] process on the consumer posting fees he or she cannot pay. It is self-evident that such a provision is unduly harsh and one-sided, defeats the expectations of the nondrafting party, and shocks the conscience. While arbitration may be within the reasonable expectations of consumers, a process that builds prohibitively expensive fees into the arbitration process is not." *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90 (2003). Here, the arbitration agreement is not clear how much Plaintiff Martinez would have to pay to arbitrate her claims. Holland Decl. ¶ 12. There is no language in the agreement about which party is to pay the cost and no specific arbitration rules are incorporated. *Id*. The only reference to any particular rules is a direction for Plaintiff Martinez to "download a 'demand for arbitration' form from the American Arbitration Association" *Id*. But even assuming this incorporates AAA as the arbitrating body, the agreement is silent as to which AAA rules apply, which greatly affects Plaintiff Martinez's access to relief. Under the AAA Commercial Arbitration Rules, Plaintiff Martinez would be required to pay the administrative fees, which in this case will total more than $15,000. Beyond that, she

[3] https://www.chooseyourhorizon.com/legal/terms.

would be minimally required to share in the cost of the arbitrator. Thus, to litigate her individual claims against a corporation, Plaintiff Martinez would have to expend over $15,000. This is clearly unconscionable. *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1104 (2021) (finding arbitration clause substantively unconscionable where Commercial, rather than Consumer Arbitration Rules applied because the Commercial Arbitration Rules "make the process more expensive for consumers than the otherwise applicable AAA Consumer Rules."). These ambiguities must be construed against Defendant. *Sandquist*, 1 Cal. 5th at 248.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Dated: April 14, 2025

**BURSOR & FISHER, P.A.**

By: *__/s/ L. Timothy Fisher__*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiffs*