**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
         jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN MARTINEZ and ELI SILVA, individually and on behalf of all others similarly situated,<br><br>                            Plaintiffs,<br>     v.<br><br>CHOOSE YOUR HORIZON, INC.,<br><br>                          Defendant. | Case No. 3:24-cv-02798-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANT CHOOSE YOUR HORIZON, INC.; SUPPORTING MEMORANDUM OF LAW**<br><br>Date:  January 29, 2026<br>Time:  9:30 am<br>Courtroom: B<br>Judge:  Hon. Laurel Beeler |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on January 29, 2026, at 9:30 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom B on the 15th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Laurel Beeler presiding, Plaintiffs Karen Martinez and Eli Silva, ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement") submitted herewith; (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint the undersigned as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing (the "Motion").

This Motion is made on the grounds that terms of the proposed Settlement Agreement are fair, reasonable, and adequate, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Preliminarily Approving the Proposed Class Action Settlement, Scheduling Hearing for Final Approval Thereof and Approving the Proposed Form and Plan of Class Notice (the "[Proposed] Preliminary Approval Order").

The Motion is based on the Declaration of Philip L. Fraietta (the "Fraietta Decl.") and the exhibits attached thereto, including the Settlement Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Law filed herewith; the pleadings and papers on file in this Litigation; and such other evidence and argument as may subsequently be presented to the Court.

Dated:  October 31, 2025          **BURSOR & FISHER, P.A**.

                              By:   */s/ Philip L. Fraietta*
                                    Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
           jwilner@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PAGE(S)

MEMORANDUM OF LAW ................................................................................................1

I.      INTRODUCTION ..............................................................................................1

II.     PROCEDURAL BACKGROUND .....................................................................1

III.    INFORMATION ABOUT THE PROPOSED SETTLEMENT .........................2

        A.      PG 1(a): Class Definition ........................................................................2

        B.      PG 1(b): The Claims to be Released .......................................................2

        C.      PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Fund ..........3

                The Settlement Fund .................................................................................3

                Service Awards ........................................................................................3

                Attorneys' Fees and Expense Award ........................................................4

        D.      PG 1(f) & PG 2: Settlement Administration ............................................4

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .........5

        A.      The *Hanlon* Factors.................................................................................6

                Strength of Plaintiffs' Case .....................................................................6

                Risk of Continuing Litigation ..................................................................8

                Risk of Maintaining Class Action Status .................................................9

                PG 1(c): The Amount Offered in Settlement ...........................................9

                The Extent of Discovery ........................................................................10

                Experience and Views of Counsel .........................................................11

        B.      Rule 23(e)(2) Factors .............................................................................11

                1.      The Class Is Adequately Represented........................................11

                2.      The Settlement Was Negotiated at Arm's Length .....................11

                3.      The Settlement Provides Adequate Relief to the Settlement Class ..........12

                4.      The Settlement Is Equitable ......................................................14

V.      CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE....15

        A.      The Class Satisfies Rule 23(a) ................................................................16

                1.      The Class Is Sufficiently Numerous. ........................................16

                2.      Common Questions of Law and Fact Exist. ..............................16

                3.      Plaintiffs' Claims are Typical ...................................................17

                4.      Plaintiffs and Their Counsel Adequately Represent the Class ..................18

        B.      The Class Satisfies Rule 23(b)(3) ..........................................................18

                1.      Common Questions Predominate. .............................................19

                2.      Superiority.................................................................................20

VI.     B&F AND DRURY LEGAL SHOULD BE APPOINTED AS CLASS COUNSEL .......20

VII.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ..........................21

        A.      The Content of the Proposed Class Notice Complies with Rule 23(c)(2)
                and the Northern District's Procedural Guidelines................................21

        B.      Distribution of the Class Notice Will Comply with Rule 23(c)(2).......................21

CONCLUSION................................................................................................................21

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**CASES**

4

*Alvarez v. Sirius XM Radio Inc.*,
5
   2020 WL 7314793 (C.D. Cal. July 15, 2020) ................................................................ 12, 13

6

*Amchem Prods. v. Windsor*,
7
   521 U.S. 591 (1997) .......................................................................................................... 15, 19

*Arnott v. U.S. Citizenship & Immigr. Servs.*,
8
   290 F.R.D. 579 (C.D. Cal. 2012) ............................................................................................ 15

9

*Barbosa v. Cargill Meat Sols. Corp.*,
10
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................................ 19

11

*Carlotti v. ASUS Computer Int'l*,
   2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .......................................................................... 6
12

*Carter v. XPO Logistics, Inc.*,
13
   2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ........................................................................... 6

14

*Cavin v. Home Loan Ctr., Inc.*,
15
   236 F.R.D. 387 (N.D. Ill. 2006) .............................................................................................. 15

16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F. 3d 566 (9th Cir. 2004) ................................................................................................... 6
17

*Cottle v. Plaid Inc.*,
18
   340 F.R.D. 356 (N.D. Cal. 2021) ........................................................................................... 15

19

*Dexter's LLC v. Gruma Corp.*,
20
   2023 WL 8790268 (S.D. Cal. Dec. 19, 2023) ........................................................................... 7

21

*Doe v. Eating Recovery Center LLC*,
   2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........................................................................... 8
22

*Elder v. Hilton Worldwide Holdings, Inc.*,
23
   2020 WL 11762284 (N.D. Cal. Apr. 29, 2020) ......................................................................... 5

24

*Evans v. Linden Rsch., Inc.*,
   2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ......................................................................... 21
25

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
26
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................................... 7

27

*Guzman v. Oxnard Lemon Assocs., Ltd.*,
28
   1992 WL 510094 (C.D. Cal. Aug. 28, 1992) ......................................................................... 16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................ passim

*Hester v. Vision Airlines, Inc.*,
2009 WL 4893185 (D. Nev. Dec. 16, 2009) .......................................... 18

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................ 14

*In re Google Location History Litig.*,
2024 WL 1975462 (N.D. Cal. May 3, 2024) .......................................... 11

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................... 10, 13

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......................................... 9

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................... 5, 13

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................... 5

*In re Vizio, Inc., Consumer Priv. Litig.*,
2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) ......................................... 15

*Johnson v. Triple Leaf Tea Inc.*,
2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ......................................... 9

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ............................................................... 17

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................... 10

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020) .......................................................... 16

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ............................................................... 14

*Larsen v. Trader Joe's Co.*,
2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................................... 8

*Linney v. Cellular Alaska P'ship*,
1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................... 13

*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ............................................................... 19

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ........................................................................ 17

*Miramontes v. U.S. Healthworks, Inc.*,
   2017 WL 11633665 (C.D. Cal. Sept. 5, 2017) ............................................... 11

*Moss v. USF Reddaway, Inc.*,
   2018 WL 5099291 (C.D. Cal. Feb. 15, 2018).................................................. 8

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)........................................................... 8, 10, 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................... 7, 10

*Pena v. Taylor Farms Pac., Inc.*,
   2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ................................................... 6

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021)......................................... 12, 14

*Pipich v. O'Reilly Auto Enterprises, LLC*,
   2024 WL 2885342 (S.D. Cal. June 7, 2024)................................................... 6

*Ramirez v. TransUnion LLC*,
   951 F.3d 1008 (9th Cir. 2020) ....................................................................... 18

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................. 7, 8, 9, 10

*Santoro v. Aargon Agency, Inc.*,
   252 F.R.D. 675 (D. Nev. 2008)...................................................................... 18

*Smith v. Kaiser Found. Hosps.*,
   2021 WL 2433955 (S.D. Cal. June 15, 2021)................................................. 8

*State of California v. eBay, Inc.*,
   2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) .............................................. 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................ 18

*Torres v. Pet Extreme*,
   2015 WL 224752 (E.D. Cal. Jan. 15, 2015) ................................................... 7

*Torres v. Pet Extreme*,
   2015 WL 13653878 (E.D. Cal. Feb. 25, 2015) ............................................... 7

*Vandervort v. Balboa Cap. Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) .............................................................. 7

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................................ 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................ 13, 14

*Wellens v. Sankyo*,
    2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ........................................................ 13

*White v. Imperial Adjustment Corp.*,
    2002 WL 1809084 (E.D. La. Aug. 6, 2002) ........................................................ 15

*Wolin v. Jaguar Land Rover N. Am. LLC*,
    617 F.3d 1168 (9th Cir. 2010) ........................................................ 20

**RULES**

Fed. R. Civ. P. 23 ........................................................ 15, 16, 20

Fed. R. Civ. P. 23(a) ........................................................ 16, 17

Fed. R. Civ. P. 23(b) ........................................................ 16, 19, 20

Fed. R. Civ. P. 23(c)(2) ........................................................ 21

Fed. R. Civ. P. 23(e) ........................................................ 5, 6, 12, 14

Fed. R. Civ. P. 23(g) ........................................................ 20

**OTHER AUTHORITIES**

3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:19 (6th ed.) ........................................................ 15

Manual for Complex Litigation, Second § 30.44 (1985) ........................................................ 5

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

Plaintiffs Karen Martinez and Eli Silva ("Plaintiffs") and Defendant Choose Your Horizon, Inc. ("Choose" or "Defendant")[1] have reached a California-wide class action settlement in this matter which establishes a non-reversionary common fund of $400,000.00 (the "Settlement Fund"). This Settlement is an extraordinary result, reached after months of hard-fought negotiations. If approved, Settlement Class Members will automatically receive immediate monetary relief, estimated to be $337 each, from the Settlement Fund.

Accordingly, Plaintiffs respectfully request that the Court: (i) grant preliminary approval of the proposed Settlement Agreement, (ii) provisionally certify the Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Philip L. Fraietta of Bursor & Fisher, P.A. ("B&F") and Scott R. Drury of Drury Legal, LLC ("Drury Legal") as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of Class Notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing.

## II.    PROCEDURAL BACKGROUND

Plaintiff Karen Martinez filed this action on May 9, 2024. ECF No. 1.[2] On September 20, 2024, the Court stayed the action to allow the Parties to participate in a private mediation. ECF No. 15. The Parties participated in a mediation with former Chief Judge of the United States District Court for the Northern District of Illinois James F. Holderman, who is a neutral mediator affiliated with JAMS, on November 26, 2024. In preparation for the mediation, the Parties exchanged discovery and met and conferred several times. The Parties did not reach a settlement on that date, but continued to negotiate and over the following months, and ultimately finalized the Settlement Agreement. The Parties finally executed the Settlement Agreement on October 31,

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Philip L. Fraietta (the "Fraietta Decl.").

[2] Plaintiffs filed an amended complaint on January 29, 2025 (ECF No. 35), which added Plaintiff Silva to the action.

2025.

## III.   <u>INFORMATION ABOUT THE PROPOSED SETTLEMENT</u>

The key terms of the settlement are summarized below, in accordance with the Northern District of California's Procedural Guidelines for Class Action Settlements ("Procedural Guidelines" or "PG").

### A.   PG 1(a): Class Definition

The proposed Settlement Class consists of "all California residents who, from May 9, 2023, to and through July 11, 2024, had their personally identifiable information or protected health information disclosed to third party entities, as a result of using the Website while located in California." Settlement Agreement § 1.30. The proposed Settlement Class consists of X individuals.  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons. *Id.* This modifies the Class definition in the Complaint consistent with the evidence to-date regarding Defendant's conduct.

### B.   PG 1(b): The Claims to be Released

Consistent with the allegations in the Complaint, the Settlement Agreement releases:

> [A]ny and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, whether based on the CIPA or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of the Website Claims or any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of information relating to Settlement Class Members, including but not limited to all claims that were brought or could have been brought in the Action relating

to any and all Releasing Parties.

Settlement Agreement § 1.25.

This includes Plaintiffs' claims for California Confidentiality of Medical Information Act ("CMIA"), the California Invasion of Privacy Act ("CIPA"), and California Constitutional claims.

Plaintiffs' counsel is not aware of any other cases that will be affected by the settlement. Fraietta Decl. ¶ 13.

## C.    PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Fund
### The Settlement Fund

Choose will pay $400,000.00 into a non-reversionary Settlement Fund that will be used to pay all Settlement Class Members, Notice and Settlement Administration Costs, taxes owed by the Settlement Fund, any Court-approved service award to Plaintiffs, and any Court-approved Attorneys' Fees and Expense Award. Settlement Agreement §1.32. The Settlement Amount reverts to Choose only if the Settlement Agreement is voided, cancelled, or terminated. Settlement Agreement § 9.

Class Members will not be required to submit claim forms in order to participate in the Settlement. Instead, the Net Settlement Fund will automatically be distributed to Class Members on a *pro rata* basis. Settlement Agreement § 2.1.b. The amount to be distributed to each Authorized Claimant will be calculated by dividing the Net Settlement Fund by the number of Class Members. *Id.* Proposed Class Counsel estimates the payments will be $337 per Class Member. Fraietta Decl. ¶ 10. Any funds remaining after the 180-day deadline for negotiating Claim Payment checks will be redistributed *pro rata* to Authorized Claimants that cashed their initial distribution check or received an electronic payment, so long as the reallocated *pro rata* share to each eligible Authorized Claimant is at least $5.00. *Id.* § 2.1.g. Any funds still remaining after 180 days from distribution will be distributed *cy pres* to the California Access to Justice Commission or another non-sectarian, not-for-profit organization(s) recommended by Class Counsel and approved by the Court. *Id.*

### Service Awards

In recognition of their efforts on behalf of the Settlement Class, subject to Court approval,

Plaintiffs will apply for a service award of $ 5,000 each, as appropriate compensation for their time and effort serving as Plaintiffs and putative Class Representative. Plaintiffs have spent substantial time on this action, as they have assisted with the investigation of this action and the drafting of the Complaint, been in contact with counsel frequently, stayed informed of the status of the action, and have approved and executed the Settlement. Fraietta Decl. ¶ 19.

**Attorneys' Fees and Expense Award**

The Settlement Agreement provides that the Settlement Fund may also be used to pay Plaintiffs' Counsel's reasonable attorneys' fees and to reimburse expenses in this action, in an amount to be approved by the Court. *See* Settlement Agreement § 8.1. Plaintiffs will petition the Court for an award of attorneys' fees not to exceed 25% of the Settlement Fund ($100,000) plus reasonable Litigation Expenses. Fraietta Decl., ¶ 18. At this time, Plaintiffs anticipate seeking no more than $10,000 as reimbursement for any Litigation Expenses incurred by Plaintiffs' Counsel. *Id.* The lodestar invested in this case by Plaintiffs' Counsel as of October 2025 is approximately $100,500.[3] *Id.* If this lodestar remains unchanged (which is unlikely), the proposed attorneys' fee would be less than Plaintiffs' counsel's lodestar. *Id.*

### D.    PG 1(f) & PG 2: Settlement Administration

The proposed Settlement Administrator is Simpluris. *Id.* ¶ 20. Counsel selected the Settlement Administrator after soliciting competing bids from three potential claims administrators, each of whom submitted responses. *Id.* Email notice and supplemental notice methods (*e.g.*, mail notice and paid digital/social media plans) were proposed by each potential administrator. *Id.* Over the past two years, to the best of my knowledge, Bursor & Fisher has utilized Simpluris as a settlement administrator for new engagements nine times. *Id.* ¶ 22. This is Drury's second engagement with Simpluris. *Id.*

Plaintiffs' Counsel is satisfied that Simpluris employs numerous control systems and procedures that it believes meet or exceed relevant industry standards for securely handling class member data, including technical controls, administrative policies, and physical access controls

---

[3] In moving for final approval, Plaintiffs will provide the total amount of Litigation Expenses and lodestar for all Plaintiffs' Counsel.

for handling such data and appropriate data collection and retention, data destruction, audit, and crisis and risk management policies. *See* Declaration of Bri Nelson of Simpluris, Inc. Regarding the Proposed Notice Plan and In Support of Plaintiffs' Motion for Preliminary Approval ("Nelson Decl.") ¶¶ 4-18. Simpluris accepts responsibility for the security of Class Member's information and data and implements detailed trainings and response plans to secure such data. *Id.* ¶¶ 16-18. Simpluris maintains insurance in case of errors, including coverage for professional liability errors and omissions in its administration, as well as a fidelity bond for employee dishonesty losses, additional computer fraud and wire transfer communications fraud coverage, and network and information security liability coverage. *Id.* ¶ 19.

Simpluris anticipates a total of administrative costs of $12,524. Nelson Decl. ¶ 20. This amount is reasonable given that it accounts for only 3% of the total settlement value. The costs are to be paid out from the Settlement Fund. Settlement Agreement § 1.32.

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The purpose of a preliminary approval hearing is for the Court to ascertain whether to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (internal quotation marks omitted) (*quoting* Manual for Complex Litigation, Second § 30.44 (1985)); *see also Elder v. Hilton Worldwide Holdings, Inc.*, WL 11762284, at *3 (N.D. Cal. Apr. 29, 2020) (a court must preliminarily find "that it will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal.") (quoting Fed. R. Civ. P. 23(e)(1)(B)) (internal quotations omitted). While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). When a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Carlotti*

*v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. *Carlotti*, 2019 WL 6134910, at *3.

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings"; and (6) "the experience and views of counsel."[4] *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004) (same); *Sciortino v. Pepsico, Inc.*, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016) (same); *Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019). In addition to these factors, courts also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), and any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2); *accord Pena*, 2021 WL 916257, at *2-3. There is a significant overlap between the *Hanlon* factors and the Rule 23(e)(2) factors.

### A.    The *Hanlon* Factors

### Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625

---

[4] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time. *See Pipich v. O'Reilly Auto Enterprises, LLC*, 2024 WL 2885342, at *10 (S.D. Cal. June 7, 2024) (explaining a full assessment of the fairness factors is not necessary at the preliminary approval stage and is "reserved" for final approval).

(9th Cir. 1982).  The court may "presume that through negotiation, the [p]arties, counsel, and mediator arrived at a reasonable range of settlement by considering [p]laintiff's likelihood of recovery."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at \*9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Plaintiffs' underlying investigation, which includes detailed analysis of source code on Defendant's website, provides a strong factual basis for Plaintiffs' claims and a potential recovery. Plaintiffs have always believed, and still believe, that Choose would be held liable on the merits if the case proceeded to trial.  Plaintiffs would expect discovery to confirm Choose's use of the tracking technologies at issue. Fraietta Decl. ¶ 13.  If Plaintiffs were to succeed at trial on behalf of a class, and maximum statutory penalties were awarded under CIPA and the CMIA, Choose would have been liable for approximately $4.75 million. *Id.*

Nevertheless, Plaintiffs and their counsel recognize that a favorable outcome was not assured and that her claims against Choose would face risks at the class certification, summary judgment, and trial phases of the Litigation.  *Id.* ¶ 14. The Settlement Class faced risks at class certification given the new and evolving landscape of laws governing data collected through Defendant's Tracking Software. *See Dexter's LLC v. Gruma Corp.*, No. 23-CV-212-MMA-AHG, 2023 WL 8790268, at \*5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval of settlement given "the evolving legal landscape" of the law at issue in the case); *Torres v. Pet Extreme*, No. 1:13-CV-01778-LJO, 2015 WL 224752, at \*6 (E.D. Cal. Jan. 15, 2015) (finding that the "risk that an opinion could issue changing the legal landscape in this relatively new area of [law]" favors approval of settlement), *adopted* 2015 WL 13653878 (Feb. 25, 2015); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014) (finding "novel legal issues" raised in the case "favor approving [the] settlement); Fraietta Decl. ¶ 15. Although there are many cases pending in this District for similar misconduct, only one has advanced through the class certification stage.[5] Fraietta Decl. ¶ 14. This developing body of law presents inherent risks regarding the scope and nature of the Class. *Id.*

---

[5] *See, e.g.*, *Doe v. FullStory, Inc.*, No. 3:23-cv-00059 (N.D. Cal.); *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580 (N.D. Cal.).

1    Similar risks also exist at the merits stage of the Litigation. Plaintiffs are aware of only one

2    case involving similar Tracking Software to survive summary judgment: *Frasco v. Flo Health,*

3    *Inc.*, 3:21-cv-00757 (N.D. Cal.), ECF No. 485; Fraietta Decl. ¶ 15. While the court there denied

4    Google's motion for summary judgment on many of the same issues presented in this case, the

5    record here is still undeveloped, leaving residual uncertainty as to Defendant's potential defenses.

6    *Id*. Since the *Flo* decision, a court in this District granted summary judgment in a CIPA case

7    involving the Meta Pixel, further increasing the risk of continued litigation. *Doe v. Eating Recovery*

8    *Center LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025); s*ee Moss v. USF Reddaway, Inc.*,

9    2018 WL 5099291, at *7 (C.D. Cal. Feb. 15, 2018) (finding the risk of "proceed[ing] on the merits"

10   weighs in favor of settlement where defendants raised "many substantive defenses" in their

11   unresolved summary judgment motion); *Smith v. Kaiser Found. Hosps.*, 2021 WL 2433955, at *7

12   (S.D. Cal. June 15, 2021) (finding that risk of "continued litigation" at later stages such as summary

13   judgment weighs in favor of approval where some "factual disputes" remain).

14   The Settlement eliminates these and other risks of non-recovery to Plaintiffs and the Class

15   and replaces them with certain relief and a positive recovery for each Settlement Class Member.

16   *Id*.; *see Rodriguez*, 563 F.3d at 956-66 ("[O]ne factor that may bear on review of a settlement is

17   the advantages of the proposed settlement versus the probably outcome of a trial on the merits of

18   liability and damages as to the claims, issues, or defenses of the class and individual class

19   members[.]") (citation and internal quotations omitted).

20   **Risk of Continuing Litigation**

21   Given the risks associated with continued litigation, approval of the proposed settlement is

22   appropriate. Generally, acceptance and approval of settlement is preferable to litigation, unless

23   the settlement is "clearly inadequate," *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

24   523, 526 (C.D. Cal. 2004), and settlements are "favored where, as here, significant procedural

25   hurdles remain, including class certification and an anticipated appeal." *Larsen v. Trader Joe's*

26   *Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (citing *Rodriguez*, 563 F.3d at 966). By

27   reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and

28   better assure recovery for the Class.

Barring settlement approval, the case would require prolonged discovery, including depositions and substantial written discovery, expert discovery, and summary judgment on Plaintiffs' claims against Choose and its defenses. Even if Plaintiffs' claims—and the Settlement Class as defined—survived all of these challenges, they would face risks at trial. Despite every jury selection tool that is available today, it is virtually impossible to predict with any certainty how a jury will evaluate liability and damages, making the ultimate outcome at trial highly uncertain for both parties. Looking beyond trial, Choose or Plaintiffs would also likely appeal the merits of at least some adverse decision, adding several years to disposition, as well as prolonging the life of the risks described herein.

The Settlement, by contrast, accounts for these risks and permits a prompt resolution of this Litigation on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### Risk of Maintaining Class Action Status

Plaintiffs also face risks in maintaining class status through trial. Assuming that the Court were to grant a motion for class certification, Choose could seek an interlocutory appeal or attempt to decertify the Class based on subsequent developments. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time . . . is one that weighs in favor of settlement.") (internal citations omitted). Risk, expense, and delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Settlement Class Members receive a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay.

### PG 1(c): The Amount Offered in Settlement

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp.

3d 823, 832 (N.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 965). In assessing the consideration available to Settlement Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citation omitted).

This amount is reasonable given Choose's current financial condition. While, at their maximum, the statutory penalties available under CIPA and CMIA could amount to $4.75 million, assuming they apply to the Class (*see* Fraietta Decl. ¶ 16.), Choose likely could not withstand a judgment of that size. Fraietta Decl. ¶ 16. Rather than insist on an illusory, maximum recovery that Choose would be unable to pay, the Settlement resolves Plaintiff's and Settlement Class Members' claims for an estimated $337 per person.[6] *Id*. This significantly higher per class member than other actions involving similarly claims with statutory damages. *See Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524-ALC (S.D.N.Y) (providing $9.00 per class member in an action alleging violations of the Video Privacy Protections Act); *In re Advocate Aurora Health Pixel Litig.*, No. 22-CV-1253 (E.D. Wis.) (providing $11.64 per class member in an action alleging wiretapping claims).

Weighing the benefits of the proposed Settlement against the risks associated with continued litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.

### **The Extent of Discovery**

Courts also evaluate whether class counsel had sufficient information to make an "informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs received information as a result of discovery and related to the mediation, including information regarding the implementation of the Pixels and APIs on

---

[6] This is calculated assuming a *pro rata* distribution of the Settlement, based on the Settlement Administrator's projections and subtracting the proposed attorneys' fees and costs, service awards to Plaintiffs, and Litigation Expenses. *See* Section III.C.1, above.

Defendant's website and information regarding Defendant's financial condition. In short, the proposed Settlement is the result of fully informed negotiations. Fraietta Decl. ¶ 17.

**Experience and Views of Counsel**

The judgment of experienced counsel regarding the Settlement is entitled to great weight. *Miramontes v. U.S. Healthworks, Inc.*, 2017 WL 11633665, at *7 (C.D. Cal. Sept. 5, 2017) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the Class") (citing *DIRECTV, Inc.*, 221 F.R.D. at 528). "[T]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Google Location History Litig.*, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024). Plaintiff's Counsel here have extensive experience in prosecuting and litigating consumer class action cases. Fraietta Decl. ¶ 17. They have conducted extensive investigation in this case, and demanded and obtained documents and information in advance of mediation and in discussions with Defendant's counsel. *Id.* That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate under the applicable factors weighs heavily in favor of this Court's approval of the Settlement.

**B.      Rule 23(e)(2) Factors**

**1.      The Class Is Adequately Represented**

As discussed further below, Plaintiffs' interests here are aligned with other Settlement Class Members' interests because they suffered the same injuries when Choose disclosed their personally identifiable and confidential medical information to third parties without their consent. *See* Sections V.A.3-4. Because Plaintiffs and the Class suffered these alleged injuries as a result of Defendant's common course of conduct, Plaintiffs have an interest in vigorously pursuing the claims of the Class. *Id.* Further, as elaborated upon below, Plaintiffs' attorneys have extensive experience (Fraietta Decl. ¶ 17), and have more than adequately met the obligations and responsibilities of Class Counsel. *See* Section V.A.4. This factor thus favors preliminary approval.

**2.      The Settlement Was Negotiated at Arm's Length**

This proposed Settlement is the result of extensive negotiations, including a formal mediation. Fraietta Decl. ¶ 4. Not only was the settlement not collusive, but Plaintiffs achieved a

1   result better than that of comparative actions. *See* Section IV.

2          Under such circumstances, the proposed Settlement is entitled to a finding of

3   reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See*

4   *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving

5   settlement achieved following "arm's-length negotiations . . . supervised by [an experienced

6   neutral]" and involving experienced class counsel that had performed sufficient investigation "to

7   make an informed decision about the Settlement and about the legal and factual risks of the case");

8   *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding

9   use of mediators "tends to support the conclusion that the settlement process was not collusive").

10          **3.    The Settlement Provides Adequate Relief to the Settlement Class**

11          Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and

12   appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

13   the method of processing class-member claims, if required; (iii) the terms of any proposed award

14   of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified

15   under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon*

16   factors including: "the risk, expense, complexity, and likely duration of further litigation," "the

17   risk of maintaining class action status throughout the trial," and "the amount offered in settlement."

18   *Hanlon,* 150 F.3d at 1026. As noted above, the Settlement satisfies all *Hanlon* factors. *See* Section

19   IV.A.1–6, *supra*.

20          Regarding "the effectiveness of any proposed method of distributing relief to the class," it

21   is "important for the court to scrutinize the method of claims processing to ensure that it facilitates

22   filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal.

23   July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims

24   processing method should deter or defeat unjustified claims, but the court should be alert to

25   whether the claims process is unduly demanding." *Id.* Under the terms of the proposed Settlement,

26   Settlement Class Members will not be required to submit a claim and will be paid *pro rata*

27   payments from the Settlement Fund. Settlement Agreement § 2.1.b. These payments will be made

28   no later than 28 days after the Settlement's Effective Date. *Id*. The Court should thus find that "this

1  process is not unduly demanding, and that the proposed method of distributing relief to the Class

2  is effective." *Alvarez*, 2020 WL 7314793, at *6. Furthermore, unclaimed funds (*e.g.*, from

3  uncashed checks) will be re-distributed to Settlement Class Members, so long as each claimant

4  will received at least $5.00. Settlement Agreement § 2.1.g.

5         With respect to "the terms of any proposed award of attorney's fees,"[7] Plaintiffs' Counsel

6  will apply for attorneys' fees and will not exceed 25% of the Settlement Fund ($100,000).

7  Settlement Agreement § 8.1. The Ninth Circuit has identified five factors that are relevant in

8  determining requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of

9  litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund,

10 (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the

11 fee and the financial burden carried by Plaintiffs and the Class. *See Vizcaino v. Microsoft Corp.*,

12 290 F.3d 1043, 1048-50 (9th Cir. 2002). Although Plaintiffs' Counsel will address each factor in

13 detail in any subsequent fee application, these requirements are easily satisfied now.

14        First, Plaintiffs' Counsel has secured a $400,000 cash settlement. This is an excellent result

15 for the reasons stated above. *See* Section IV.A.4.

16        Second, Plaintiffs have established that there are significant risks in entering protracted

17 litigation. *See* Sections IV.A.1-3.

18        Third, the requested fee is below market rates as reflected by awards made in similar cases

19 in this district. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-60 (9th Cir. 2000)

20 (affirming award of 33.5% of $1,725,000 settlement fund in fees); *Linney v. Cellular Alaska*

21 *P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)

22 (affirming award of 33.3% of $6,000,000 settlement fund in fees); *id.* ("The $2,000,000 requested

23 by class counsel amounts to one-third of this common fund . . . Courts in this district have

24 consistently approved attorneys' fees which amount to approximately one-third of the relief

25 procured for the class."); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379 (affirming award of

26 33.3% of $33,000,000 settlement fund in fees); *Wellens v. Sankyo*, 2016 WL 8115715, at *3 (N.D.

27 Cal. Feb. 11, 2016) (awarding 35% of $8,200,000 settlement fund in fees).

28

---

[7] *See also* PG 6.

Finally, the requested fees are also fair given the time Plaintiffs' Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all, absent successful resolution. Thus, because of the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class, Plaintiffs' Counsel's fee award request of one-fourth of the total Settlement Value is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

The Settlement thus provides adequate relief to the Class pursuant to Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### 4.    The Settlement Is Equitable

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). As explained above, there is no preferential treatment here because each Settlement Class Member will  be paid a *pro rata* portion of the settlement. *See* Settlement Agreement § 2.1.b. Courts in this district have found that allocating settlement benefits among class members in this manner is equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *State of California v. eBay, Inc.*, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (explaining a proposed settlement is appropriate where it "does not improperly grant preferential treatment to class representatives or segments of the class").[8] Unclaimed funds will be redistributed to Settlement Class Members.. *See* Settlement Agreement § 2.1.g.

Finally, any undistributed funds will go as a *cy pres* distribution to "California Access to Justice Commission, a non-sectarian, not-for-profit organization." *Id*. Accordingly, the *cy pres* funds will be used as a public good, thus indirectly benefiting Settlement Class Members. This satisfies the requirements for a *cy pres* award in the Ninth Circuit. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819-22 (9th Cir. 2012); Settlement Agreement § 2.1.g. Thus, this factor weighs in favor of granting approval.

---

[8] The service awards requested for Plaintiffs are presumptively reasonable and therefore do "not constitute inequitable treatment of class members." *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (explaining [s]ervice awards as high as $5,000 are presumptively reasonable in this judicial district.").

1

2     **V.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS
           APPROPRIATE**

3
          Plaintiffs request that the Court provisionally certify the following Settlement Class:
4
              All California residents who, from May 9, 2023, to and through July 11, 2024, had
5             their personally identifiable information or protected health information disclosed
              to third party entities, as a result of using the Website while located in California.
6
*See* Settlement Agreement § 1.30. Provisional certification permits notice of the proposed
7
Settlement to the Class to inform Settlement Class Members of the existence and terms of the
8
proposed Settlement, of their right to be heard on its fairness, of their right to opt-out or object,
9
and of the date, time, and place of the formal fairness hearing. *See* MANUAL for COMPLEX LITIG.,
10
§§ 21.632, 21.633.
11
          The decision whether to certify these actions as class actions is committed to the sound
12
discretion of this Court within the guidelines set forth in Fed. R. Civ. P. 23. *See*, *e.g.*, 3 NEWBERG
13
AND RUBENSTEIN ON CLASS ACTIONS § 7:19 (6th ed.); *Hanlon*, 150 F.3d at 1023; *Arnott v. U.S.*
14
*Citizenship & Immigr. Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012).
15
          Courts have long regarded "consumer claims" as "particularly appropriate for class
16
resolution."  *White v. Imperial Adjustment Corp.*, 2002 WL 1809084, at *15 (E.D. La. Aug. 6,
17
2002); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan Ctr.,*
18
*Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly
19
certified for class treatment"). As set forth below, there is no basis for regarding these consumer
20
claims any differently. In fact, the Ninth Circuit in *Hanlon*, 150 F.3d at 1019-23, specifically
21
approved the class certification of a similar nationwide class for settlement purposes. *See also In*
22
*re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639, at *2 (C.D. Cal. Jan. 4, 2019)
23
(conditionally certifying class for settlement of consumer privacy claims); *Cottle v. Plaid Inc.*, 340
24
F.R.D. 356, 363 (N.D. Cal. 2021) (certifying class for settlement purposes in case involving
25
interception of plaintiffs' financial information).
26
          Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are
27
met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:
28
          (1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests

of the class.

Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, all applicable Rule 23 requirements are met, and Choose consents to provisional certification for settlement purposes. Thus, provisional certification should be granted.

### A.    The Class Satisfies Rule 23(a)

#### 1.    <u>The Class Is Sufficiently Numerous.</u>

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019. There is "[n]o exact numerical formula" that determines numerosity. *Guzman v. Oxnard Lemon Assocs., Ltd.*, No. CV 91-6957 KN (EX), 1992 WL 510094, at *2 (C.D. Cal. Aug. 28, 1992). But numerosity can be presumed with 40 members. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find numerosity satisfied if the class includes forty or more members.") (citations omitted).  Here, the proposed Settlement Class includes approximately 761 Choose website users. Fraietta Decl. ¶ 6.  Numerosity is thus satisfied.

#### 2.    <u>Common Questions of Law and Fact Exist.</u>

Rule 23(a)(2) requires the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2).  Commonality means that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012)). Commonality is liberally construed, and not all questions of fact and law "need [] be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.

The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019-20.

The commonality and predominance hurdles are satisfied here. Common questions of law and fact exist as to all Settlement Class Members and predominate over questions affecting only individual Settlement Class Members. These questions include, for example:

a) Whether Defendant violated Settlement Class Members' privacy rights;

b) Whether Defendant's conduct constituted an invasion of privacy at common law;

c) Whether Defendant violated CIPA by aiding, agreeing, employing, and conspiring with third parties to intercept and use Settlement Class Members' communications; and

d) Whether Defendant violated the CMIA by disclosing health information to third parties through their Tracking Software.

Further, all legal theories asserted by Plaintiffs against Choose are common to the Class as a whole, which alone is sufficient to establish commonality. *See* First Amended Complaint (Counts 1-3); *see Hanlon*, 150 F.3d at 1019-20.

### 3.    Plaintiffs' Claims are Typical

Rule 23(a)(3) requires that the class representatives' claims are typical of the class.  Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. To meet this requirement, Plaintiffs need only demonstrate that they "endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Plaintiffs' claims are typical of the claims of the Settlement Class Members in that Choose disclosed the identifiable medical information of each Settlement Class Member entered into the Choose website to third parties. *See* First Amended Complaint ¶¶ 51-115. Thus, because Plaintiffs' claims arise "from the same event or practice or course of conduct that [gave] rise to the claims of other class members and [their claims were] based on the same legal theory," Plaintiffs' claims are

1    typical. *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020).

2        **4.**    **Plaintiffs and Their Counsel Adequately Represent the Class**

3        The final threshold is that the named plaintiff be able fairly and adequately to protect the

4    interests of the class. This determination turns on just two questions: "(1) [d]o the representative

5    plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will

6    the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the

7    class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Santoro v. Aargon Agency, Inc.*,

8    252 F.R.D. 675, 682 (D. Nev. 2008).

9        Both components of the "adequacy" test are met here. Plaintiffs have actively pursued this

10    litigation on behalf of the Settlement Class Members. Both Plaintiffs and Settlement Class

11    Members were harmed by Defendant's alleged misconduct; they also share an identical interest in

12    establishing Defendant's liability and obtaining a suitable remedy for Defendant's violations of

13    law. The proposed Class Representatives have actively participated in and kept abreast of the

14    Litigation while it developed. Fraietta Decl. ¶ 19. Plaintiffs will adequately represent the Class and

15    have no conflicts or positions antagonistic to the Class.

16        B&F and Drury Legal similarly satisfy the adequacy requirement and should be appointed

17    counsel for Settlement Class. B&F and Drury Legal have demonstrated their commitment to the

18    case and are experienced in the evolving field of data privacy litigation. Fraietta Decl. ¶ 17.

19        In retaining these firms, Plaintiffs have employed counsel who are "qualified, experienced,

20    and generally able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, 2009 WL

21    4893185, at *5 (D. Nev. Dec. 16, 2009). With a wealth of experience in class action and other

22    complex litigation that proposed Plaintiffs' counsel brings, there can be no doubt that they are

23    adequate to represent the Settlement Class here.  Fraietta Decl. ¶ 17.

24        **B.**    **The Class Satisfies Rule 23(b)(3)**

25        This action is well-suited for certification under Rule 23(b)(3) because, particularly in the

26    context of this Settlement, questions common to the Settlement Class Members predominate over

27    questions affecting only individual Settlement Class Members, and the class action device provides

28    the best method for the fair and efficient resolution of the Class's claims. Choose does not oppose

provisional class certification for the purpose of effectuating the proposed Settlement. When addressing the propriety of class certification, the Court should take into account the fact that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem*, 521 U.S. at 593; *Hanlon*, 150 F.3d at 1021-23.

## 1. <u>Common Questions Predominate.</u>

A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members..." Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 621). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id.* at 1022. There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013).

As explained in Section V.A.2, common issues predominate here because the Settlement Class's claims against Choose can be proven using common evidence. Further, the proposed Settlement does not introduce individual legal or factual issues that would predominate over common issues. Certain manageability concerns are eliminated as there will no longer be a trial. Thus, the predominance requirement is satisfied.

1

2.    **Superiority**

2        "[T]he purpose of the superiority requirement is to assure that the class action is the most

3  efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am.*

4  *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Rule 23(b)(3)'s non-exclusive factors are: "(A) the

5  interest of members of the class in individually controlling the prosecution or defense of separate

6  actions; (B) the extent and nature of any litigation concerning the controversy already commenced

7  by or against members of the class; (C) the desirability or undesirability of concentrating the

8  litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in

9  the management of a class action."

10        All of these factors are present here.  There can be no doubt that managing these disputes

11  in a single class action before a single judge is preferable and more manageable than to require

12  thousands of users to each bring individual actions. The filing fees in such individual actions alone

13  would likely exceed the value of any potential recovery; there would be no incentive for an

14  individual to seek relief on an individual basis and, consequently, no adequate remedy would be

15  reasonably achievable by Settlement Class Members.

16  **VI.    B&F AND DRURY LEGAL SHOULD BE APPOINTED AS CLASS COUNSEL**

17        Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must

18  fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (4).  In making

19  this determination, the Court considers proposed counsel's: (1) work in identifying or investigating

20  the potential claim, (2) experience in handling class actions, other complex litigation, and the types

21  of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will

22  commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  As discussed above,

23  proposed Class Counsel has extensive experience in prosecuting consumer privacy cases and

24  consumer class actions in general.  *See* Section V.A.4.  As a result of their zealous efforts in this

25  case, proposed Class Counsel have secured substantial monetary relief for the Settlement Class

26  Members.  Thus, the Court should appoint B&F and Drury Legal as Class Counsel for the

27  Settlement Class.

28

## VII.     THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The Parties' Proposed Notice Program comports with the Federal Rule and with due process and should be approved.[9]

### A.     The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the Northern District's Procedural Guidelines

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice program must provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). Utilizing contact information Defendant's possession, the Settlement Administrator will disseminate Mail and Email Notice directly to Settlement Class Members. *See* Settlement Agreement § 4.1.(b). The Mail and Email Notice will include text describing the key terms of the settlements in addition to providing a link the Settlement Website, which will host additional documents and information, such as the Long-Form Notice, Settlement Agreement, and any updates relating to the final fairness hearing or deadlines in the case. *See id.*

### B.     Distribution of the Class Notice Will Comply with Rule 23(c)(2)

The Settlement Website will be published prior to or contemporaneously with Class Notice. Settlement Agreement *Id.*   The Settlement Website will include relevant documents and information about the Settlement. *Id.* § 1.33.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for preliminary approval.

Dated:  October 31, 2025          **BURSOR & FISHER, P.A**.

By:     */s/ Philip L. Fraietta*
                    Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

---

[9] Simpluris will be responsible for Class Action Fairness Act (CAFA) notice. *See* Settlement Agreement § 1.28.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jwilner@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiffs*